**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 12-20116-Civ-SCOLA

FIRST SPECIALTY INSURANCE CORP.,

    Plaintiff,

vs.

MILTON CONSTRUCTION COMPANY,

    Defendant.
_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court upon the Plaintiff's Motion for Summary Judgment [ECF No. 12], filed by First Specialty Insurance Corporation ("First Specialty"). For the reasons set forth below, this Motion is granted.

## Introduction

In this action, First Specialty seeks a declaration that it has no duty to defend or indemnify Milton Construction Company ("Milton") under two insurance policies in a Chinese drywall class action lawsuit pending in the United States District Court for the Eastern District of Louisiana. Milton has been sued by homeowners in the Louisiana action for property damage and personal injuries allegedly caused by Milton's construction of condominium units with defective Chinese drywall. First Specialty asserts in the Complaint that it has no duty to defend or indemnify Milton in the Louisiana action because, among other reasons, the applicable policies contain a Total Pollution Exclusion endorsement that bars coverage here. First Specialty now seeks summary judgment on the basis of the Total Pollution Exclusion.

## Statement of Facts[1]

In 2008, Milton and a number of other defendants were sued in a putative class action in the Eastern District of Louisiana for property damage and personal injuries allegedly caused by defective Chinese drywall. *See Block v. Gebrueder Knauf Verwatungsgesellschaft, K.G.*, et al., Case No. 11-1363 (E.D. La., filed June 8, 2008). The plaintiffs with claims against Milton in that action are all residents and homeowners at the San Lorenzo Condominium in Miami, Florida.

---

[1] Consistent with Federal Rules of Civil Procedure 56, these facts are undisputed and material, and construed in the light most favorable to Milton, as the nonmoving party.

All of the allegations against Milton in the Louisiana action arise out of the allegedly defective, and unreasonably dangerous, drywall and the harmful effects of the sulfur compounds that allegedly exited the drywall, causing property damage and personal injuries. Specifically, the plaintiffs allege that sulfur compounds exited the Chinese drywall, causing "rapid sulfidation and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property." La. Compl. ¶¶ 25, 26. The release of the sulfur compounds also allegedly "caused personal injury resulting in eye problems, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm." *Id.* ¶¶ 27, 30.

During the relevant time periods, Milton was insured under two commercial general liability policies issued by First Specialty. The policies provided insurance coverage to Milton for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which [the] insurance applies." Policy at 1 (Form CG 00 01 10 01). Both policies also contained a Total Pollution Exclusion endorsement, stating in relevant part as follows:

> This insurance does not apply to:
>
> > (1) "Bodily injury," "property damage," personal injury," or "advertising injury" caused by or arising out of, in whole or in part, the actual, alleged, or threatened discharge, dispersal seepage, migration, release, or escape of pollutants at any time.
>
> > (2) Any loss, cost, or expense arising out of any:
> >
> > > (a) request, demand, or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxifying, or neutralizing or in any way responding to, or assessing the effects of pollutants.
>
> Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals, and waste. Waste includes material to be recycled, reconditioned, or reclaimed.

*See* Total Pollution Exclusion (Endorsement FSIC-3381).

After the Louisiana action was filed, Milton requested that First Specialty defend and indemnify it in the defective Chinese drywall litigation. First Specialty took the position, however, that there is no duty to defend or indemnify under the terms of the policies due to, in part, the Total Pollution Exclusion provision. To that end, First Specialty filed this action seeking a declaratory judgment that the insurance policies do not require it to defend and indemnify Milton. This matter is now ripe for determination on summary judgment.

## **Legal Standard**

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *See Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). Where the record as a whole could not lead a rational trier of fact to find in the nonmovant's favor, there is no genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "[O]nce the moving party has met its burden of showing a basis for the motion, the nonmoving party is required to 'go beyond the pleadings' and present competent evidence designating 'specific facts showing that there is a genuine issue for trial.'" *United States v. $183,791.00*, 391 F. App'x 791, 794 (11th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but [ ] must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "Summary judgment is particularly suited to cases of insurance coverage because the interpretation of a written contract is a matter of law to be decided by the court." *Int'l Ship Repair & Marine Servs., Inc. v. N. Assur. Co. of Am.*, 2011 WL 5877505, at *4 (M.D. Fla. Nov. 23, 2011).

## **Legal Analysis**

The Court finds that First Specialty is entitled to summary judgment because, under the Total Pollution Exclusion endorsement, it has no duty to defend or indemnify Milton in the Louisiana action.

### A. Choice of Law

At the outset, the Court must determine what body of law to apply to this scope of insurance dispute. In diversity actions, such as this one, choice of law questions are resolved by reference to the forum state's law. *See Rando v. Gov't Emps. Ins. Co.*, 556 F.3d 1173, 1176 (11th Cir. 2009). "Florida is the forum state for the present action, so Florida's conflict-of-law rules will govern." *Valley Forge Ins. Co. v. Olem Shoe Corp.*, 2011 WL 3652561, at *1 (S.D. Fla. Aug. 19, 2011) (Cooke, J.). "With regard to insurance contracts, Florida follows the '*lex loci contractus*' choice-of-law rule, which 'provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage.'" *Rando*, 556 F.3d at 1176. Thus, as both parties agree, Florida substantive law applies to this declaratory judgment action because First Specialty delivered the insurance policies to Milton in Florida. *See State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006).

### B. Insurer's Duty to Defend and Indemnify

"The duty to defend depends solely on the facts and legal theories alleged in the pleadings and [the] claims against the insured." *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995). Thus, "an insurer's duty to defend its insured against a legal action arises when the complaint [in the underlying case] alleges facts that fairly and potentially bring the suit within policy coverage." *See Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442-43 (Fla. 2005). A "determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify." *See Trailer Bridge, Inc. v. Ill. Nat'l Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir. 2011). This is because "the duty to indemnify is narrower than the duty to defend and thus cannot exist if there is no duty to defend." *WellCare of Fla., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 16 So. 3d 904, 906 (Fla. 2d DCA 2009). Therefore, the Court must look to the allegations in the underlying Louisiana action as compared with the coverage afforded under Milton's insurance policies to determine whether First Specialty has any duty to defend or indemnify Milton. *See Gen. Fid. Ins. Co. v. Foster*, 808 F. Supp. 2d 1315, 1319 (S.D. Fla. 2011) (Moore, J.).

### C. Applicability of Total Pollution Exclusion

Whether First Specialty has a duty to defend Milton in the Louisiana action turns on the applicability and effect of the Total Pollution Exclusion endorsement. The Louisiana plaintiffs allege that they suffered damages and injuries caused by sulfur compounds that exited the defective Chinese drywall and entered the air. *See* La. Compl. ¶¶ 25-30. The parties disagree over whether, through these allegations, the plaintiffs in the Louisiana action are seeking to hold Milton liable for personal injuries and/or property damage caused by the alleged "discharge, dispersal, seepage, migration, release, or escape of pollutants" (*i.e.*, "any solid, liquid, gaseous, or thermal irritant or contaminant"), such that the Total Pollution Exclusion would negate the duty to defend or indemnify. *See* Total Pollution Exclusion (Endorsement FSIC-3381).

The seminal Florida case on pollution exclusions in insurance policies is *Deni Associates of Florida, Inc. v. State Farm Fire & Casualty Insurance Co.*, 711 So. 2d 1135 (Fla. 1998). In that case, the Florida Supreme Court addressed whether a pollution exclusion applied to two separate incidents, one involving indoor air contamination caused by an accidental ammonia spill inside a commercial building, and another involving two bystanders who were accidentally sprayed with insecticide near a citrus grove. *Id.* at 1136-37. In both instances, the insurers disputed coverage based upon a pollution exclusion that barred liability for any injury or damage "arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants," with "pollutants" meaning "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acides, alkalines,

chemicals and waste." *Id.* at 1137.  In considering this pollution exclusion, the Florida Supreme Court rejected the suggestion that it was ambiguous.  *Id.* at 1138.  The court also rejected the argument that the provision should apply only to environmental or industrial pollution, because nowhere in the policies did such a limitation appear.  *Id.*  This result, while following the majority rule, is contrary to the law of some jurisdictions, including Louisiana.  *Id.*  In applying the pollution exclusion to the facts of the case, the Florida Supreme Court found it "clear that the incidents at issue were excluded from coverage under the respective insurance policies." *Id.* at 1141.  The court reasoned that both ammonia fumes and insecticides were "irritants" or "contaminants" and, as such, "pollutants" under the policies. *Id.*

Following *Deni Associates*, courts in the Southern District of Florida have found allegations pertaining to the release of sulfur gases from defective Chinese drywall clearly within pollution exclusions virtually identical to the one in this case.  For example, in *Colony Insurance Co. v. Total Contracting & Roofing, Inc.*, 2011 WL 4962351 (S.D. Fla. Oct. 18, 2011) (Seitz, J.), the district court found an insurer had no duty to defend or indemnify a contractor in Chinese drywall litigation because a pollution exclusion unambiguously applied:

> The Policies are clear and unambiguous and preclude coverage for liability related to hazardous materials and/or pollutants, which the Policies define as gaseous irritants or contaminants. The allegations of the Smiths' MDL Complaint demonstrate that all of their damages and injuries arise from the "sulfides and other noxious gases" released from the Chinese manufactured drywall. That the "sulfides and other noxious gases" constitute irritants or contaminants under the Policy is readily apparent. . . . [T]hese "sulfides and other noxious gases" caused damage to property (corroding electronic appliances, electrical wiring and metal surfaces in their home) and personal injuries (eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm). Thus, it is inescapable that the "sulfides and other noxious gases" released by the Chinese manufactured drywall in the Smiths' residence plainly qualify as gaseous irritants and contaminants. . . . Moreover, the "sulfides and other noxious gases" are gaseous irritants and contaminants and therefore fall squarely within the broad definition of "pollutants" provided in the Policies.

*Id.* at *4-*5.

Likewise, in *General Fidelity Insurance Co.*, cited above, the district court found a pollution exclusion unambiguously applied to allegations of damage caused by sulfur compounds released from defective Chinese drywall.  *See Gen. Fid. Ins.*, 808 F. Supp. 2d at 1320-21.  The court's decision hinged on the fact that the sulfide gases and compounds released from the drywall allegedly caused irritation and contamination, thereby bringing such gases within the definition of "pollutants" under the policy exclusion:

> The Amended Complaint states that the presence of the excessive amounts of sulfur and strontium cause "damage and corrosion" including the "pitting and/or tarnishing" of metals. . . . [T]he excessive elements have also caused "respiratory problems, sinus problems, eye problems, and nosebleeds." The presence of the excessive amounts of sulfur and strontium obviously irritates and contaminates. It causes "pitting and/or tarnishing." In other words, their presence corrupts the metals. [The] description of bodily injuries, "respiratory problems, sinus problems, [and] eye problems," though vague, cannot escape the inference that the elements caused irritation or inflammation. . . . The [Chinese drywall] here is defective and its components obviously cause irritations and contamination – [the homeowner] pled these particular effects in her Amended Complaint. . . . Thus, the injuries and damage sustained from the drywall are within the policies' Pollution Exclusion. [This insurer] has no duty to defend or indemnify.

*Id.* (citations omitted).

The Court finds these decisions well-reasoned and instructive. In this case, the sulfur compounds that exited the Chinese drywall allegedly caused "rapid sulfidation" to personal property, including home appliances, and "eye problems, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm" to the homeowners. La. Compl. ¶¶ 26-30. From these allegations, it is readily apparent that the drywall's release of sulfur compounds both contaminated and irritated people and things. Therefore, the sulfur compounds constitute "pollutants" and the Total Pollution Exclusion applies.

In an effort to avoid this result, Milton makes several unavailing arguments. First, Milton suggests that "First Specialty's Motion for Summary Judgment should be denied because the underlying action has not alleged whether the sulfur itself has contributed to the property damage and bodily harm or whether it was in fact the Chinese Drywall that was causing the harm." Resp. at 4. This argument fails to persuade. The Louisiana plaintiffs do not contend that they suffered property damage and personal injuries simply because cheap, inferior drywall from China was used in the construction of their homes. That is, they do not claim that the drywall, just sitting there, led to the damages and injuries complained of. Instead, the Louisiana plaintiffs plainly allege that the damage and injuries were caused when the sulfur compounds exited the drywall. La. Compl. ¶ 26. The Court therefore rejects Milton's argument that there is some doubt as to the source of the harms alleged.

Next, Milton contends that the Total Pollution Exclusion is ambiguous, relying principally upon Louisiana decisions.[2] Resp. at 5-8. Milton contends that the Total Pollution Exclusion is

---

[2] In addition to the Louisiana cases, Milton also relies upon *Auto-Owners Insurance Co. v. American Building Materials, Inc.*, 820 F. Supp. 2d 1265, 1269 (M.D. Fla. 2011). But that decision involved a pollution exclusion containing different language. Milton concedes as much. Resp. at 9. Milton cannot establish that the Total Pollution Exclusion is ambiguous here by reference to a case that dealt with a significantly different policy exclusion. *See* Mark D. LoGalbo, *Applying the Pollution Exclusion: Liability Coverage for Chinese Drywall Claims*, 54 No. 5 DRI FTD 22 (May 2012).

overbroad and could lead to absurd results, if literally construed; therefore, it must be ambiguous. *Id.* at 11-12. According to Milton, the exclusion should be limited to bar coverage for environmental or industrial pollution only, as Louisiana courts have found. *Id.* This argument is foreclosed by *Deni Associates*, wherein the Florida Supreme Court unequivocally stated: "[w]e cannot accept the conclusion reached by certain courts that because of its ambiguity the pollution exclusion clause only excludes environmental or industrial pollution." *See Deni Associates*, 711 So. 2d at 1138-39. Milton also argues that it would be "very illogical" to find the Total Pollution Exclusion unambiguous "where other courts have held that the exact same language . . . was in fact ambiguous." Resp. at 5, 12. Milton incredulously asks, "how can [First Specialty] in this case argue that the language included in the [Total Pollution Exclusion] is unambiguous when other courts have held exactly the opposite?" Resp at 5. The answer is, First Specialty can make such an argument because it accords with Florida law. The cases upon which Milton relies, by contrast, apply Louisiana law, which is exactly the opposite of Florida's. In *Deni Associates*, the Florida Supreme held that the pollution exclusion was unambiguous, even while noting that a minority of jurisdictions, including Louisiana, had reached contrary conclusions. *See Deni Associates*, 711 So. 2d at 1137-39. Moreover, "the fact that different judges have reached different interpretations of similar policy language does not necessarily mean that the language is ambiguous." *Eastpointe Condo. I Ass'n, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 379 F. App'x 906, 909 (11th Cir. 2010); *see also Office Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 734 F. Supp. 2d 1304, 1315 (S.D. Fla. 2010) (Marra, J.). Under Florida law, the Court finds the Total Pollution Exclusion is unambiguous in this case. It contains very similar, if not virtually identical, language to the provision found unambiguous in *Deni Associates*. The policy exclusion is also substantial identical to the provisions at issue in *Colony Insurance Co.* and *General Fidelity Insurance Co.*, wherein the district courts also found no ambiguity. Milton's attempt to manufacture an ambiguity by relying on Louisiana law fails.

Finally, Milton argues that the Total Pollution Exclusion does not negate the duty to defend because "[t]he underlying action makes no demand that anyone conduct destructive testing to determine the severity and prevalence of Chinese drywall at the project." Resp. at 13. Milton states that, as a general contractor, it "would be involved in destructive testing and demolition in order to remove the alleged Chinese drywall which could cause damages to other areas." *Id.* According to Milton, "[i]n light of the fact that the underlying action does not request compensation for any destructive testing, or cleanup as a result of the destructive testing, this Court should find that First Specialty has a duty to defend Milton in the underlying action." *Id.* This argument makes no sense. The duty to defend is decided by reference to the allegations of the underlying action. If, as Milton

contends, the Louisiana plaintiffs have not sought compensation for destructive testing or cleanup, then obviously First Specialty would have no duty to defend against such non-existent allegations. The Court therefore rejects this argument as well.[3]

## Conclusion

For the reasons set forth above, the Court finds that the Total Pollution Exclusion applies such that First Specialty has no duty to defend or indemnify Milton in the underlying Louisiana action. Accordingly, it is hereby **ORDERED and ADJUDGED** that First Specialty's Motion for Summary Judgment [ECF No. 12] is **GRANTED**. The Clerk shall **CLOSE** this case.

**DONE and ORDERED** in chambers, at Miami, Florida on July 16, 2012.

_____
ROBERT N. SCOLA, JR.
**UNITED STATES DISTRICT JUDGE**

Copies to:
*U.S. Magistrate Judge*
*Counsel of Record*

---

[3] Milton seems to have borrowed this argument from *Auto-Owners*, wherein the court found that the pollution exclusion did not bar coverage for cleanup and removal efforts. Resp. at 13 (citing *Auto-Owners Ins. Co.*, 820 F. Supp. 2d at 1271). As already noted, however, *Auto-Owners* involved a differently worded policy exclusion. Further, while perhaps imprecisely articulated, this Court reads *Auto-Owners* as merely stating, unremarkably, that where the underlying lawsuit did not seek relief for cleanup and removal efforts, the insurer could not argue for application of a pollution exclusion to such non-existent allegations.